G. W. MOGELBERG, *et al.*, v. J. M. CLEVINGER, *et al.*, Appellants.

**Practice:** DISCRETION. Where on a petition to set aside a default for "unavoidable casualty" under Code, 3154, the evidence conflicts, a refusal to grant a petition will not be disturbed without proof of abuse of discretion.

*Appeal from Polk District Court.*—HON. W. F. CONRAD, Judge.

THURSDAY, FEBRUARY 7, 1895.

Proceedings at law to vacate a judgment rendered by default. There was a hearing by the District Court, and a judgment dismissing the petition for a new trial. The petitioner appeals.—*Affirmed.*

*Bishop & Wilcoxen* for appellants.

*Cummins & Wright* for appellees.

Robinson, J.—In July, 1885, A. R. Dabney executed to George C. Briggs a warranty deed for an eighty acre tract of land, situated in the state of Missouri. Afterwards similar deeds for the land were executed by Briggs to Derrick Bennett, by Bennett to James W. Cokenower, by Cokenower to J. M. Clevinger, and in October, 1888, by Clevinger to the plaintiff. The consideration expressed in each of the first three deeds was

the sum of eight hundred dollars; the deed from Coken-
ower to Clevinger recited a consideration of one thou-
sand five hundred dollars; and the consideration stated
in that from Clevinger to the plaintiff was one thousand
dollars.   In January, 1891, the plaintiffs sought to
recover possession of the land, which was then occupied
by one George W. Penland, by instituting against him,
in the proper court of Missouri, an action of ejectment.
After the action was commenced, and before it was
determined, the plaintiffs caused to be served upon Dab-
ney, Briggs, and Bennett a notice which informed them
that the action had been commenced; that the court in
which it was pending would commence on the first Mon-
day of the next March; and that they would be held
responsible by the plaintiffs upon their covenants of war-
ranty in case the defendant in the action should recover
judgment.   The grantors so notified did not appear in
the action to which the notice referred, but a trial was
had, which resulted in a judgment in favor of the
defendant, Penland.   The plaintiffs then commenced
this action, to which they made all the grantors in their
chain of title, whom we have named, parties defendant.
The petition describes the conveyances which we have
specified, the covenants of title which they contain, and
sets out the Missouri litigation, the notice thereof which
was given, and the result of the trial.   The petition
further alleges that, in the prosecution of the action
against Penland, the plaintiffs had expended one hun-
dred dollars in costs and attorney's fees, and demanded
against each of the defendants, on his covenant of war-
ranty, judgment for the sum of one thousand five hun-
dred dollars, with interest and costs.   The original
notice was duly served on Dabney, Briggs, and Bennett,
and required them to appear on or before noon of the
second day of the term of court, which commenced on
the fourteenth day of September, 1891.   During that

term, on the fifth day of October, the case was reached in its regular order. Briggs and Bennett did not appear, and judgment was thereupon rendered against each of them by default for the sum of one thousand and seven dollars, interest and costs. On the same day the action was dismissed as to Dabney. On the twentieth day of January, 1892, Briggs filed in the action his petition to vacate the judgment rendered against him. The grounds for relief, as stated in the petition, are substantially as follows: Briggs, after the notice of this action was served on him, went to Dabney, who was a practicing attorney of Winterset, and called his attention to the commencement of the action. Dabney then stated that he had also been served with notice of it. Thereupon he was requested by Briggs to take charge of the case, and present the defense of the latter with his own. Dabney agreed to do so, and assured Briggs that he had a good defense to the action, and that it should be made. Briggs relied upon the statement of Dabney, especially as he had an interest in the case, and intrusted the defense to him, in the belief that it would receive due attention. Briggs did not know that no appearance had been made for him until long after the rendition of the judgment. His petition charges that Dabney fraudulently procured the dismissal of the action as against himself, at the expense of a judgment against Briggs and Bennett; and that the judgment has been assigned to John Guiher, who now owns it. The petition further alleges that Briggs has now, and at all times has had, a good defense to the action, for that he had a perfect title to the land, and authority and power to sell and convey it when he executed the deed to Bennett; that the proceedings in the court of Missouri were without sufficient notice to him; and that he is not affected by the judgment rendered by that court. The petition further alleges that, after

Briggs learned that the judgment in this action had
been rendered, he went to Dabney, and was told by him
that he did not understand that he had been retained
by Briggs to appear in the case for him.    The petition
also states that the true consideration for the deed from
Clevinger to the plaintiff was but three hundred dol-
lars.    Guiher was made a party to the petition, and evi-
dence was submitted for and against Briggs.    Before
he had rested his case, he was asked if he expected to
show anything further to excuse his failure to appear
at the time specified in the notice; and, upon his answer-
ing in the negative, the court remarked that it was not
worth while to consume further time, as the facts shown
were not sufficient to excuse the default.    Judgment
dismissing the petition of Briggs was then rendered.

The record justifies the conclusion that Briggs had
not offered all his testimony when he was stopped by
the court, and, as the decision was based upon a single
ground,—the alleged insufficiency of the evidence to
excuse the default,—we need not consider any other,
and do not determine whether Briggs has shown a
defense to the action.    *Insurance Co. v. Rodecker*, 47
Iowa, 164.    Section 3154 of the Code gives to the Dis-
trict Court which has rendered a judgment power to
vacate it after the term in which it was rendered, "for
unavoidable casualty or misfortune preventing the
party from prosecuting or defending."    All the pro-
ceedings to vacate a judgment on that ground are to be
conducted, so far as is practicable, as though it were
an original action, by ordinary proceedings, except that
the defendant shall introduce no new cause, and the
cause of the petition alone shall be tried.    Code, section
3158.    The proceeding is not triable de novo in this
court.    *School Dist. v. Schreiner*, 46 Iowa, 173.

The finding of the District Court that the evidence
failed to show an excuse for the default is entitled to as

much weight, at least, as the verdict of a jury. The evidence shows that Briggs had employed Dabney, when he required the services of an attorney, for several years. After a time Dabney and Guiher formed a partnership for the practice of law, and then, when there was occasion, Briggs employed them both. He testifies that, when the notice of this action was served upon him, he and Bennett went to Dabney; that he then said to Dabney, in regard to the case, "You are equally interested with us, and why can you not look after it for all three of us?" and Dabney answered, "I can;" that Briggs then asked Dabney if he would look after the case for them, and Dabney said he would look after it for all three; that Bennett consented to the arrangement, and said he would not employ any other attorney; that the parties met several times after that occasion, and talked about the case, and at one of these times Dabney said that, if there was anything wrong with the title, one of them had better go to Missouri and buy the land; that Briggs did not pay Dabney anything in the case, but had never paid him anything until the work was done; that it was the intention of Briggs to enter an appearance in the case, and to have Dabney attend to the matter for him; that he understood and believed that Dabney agreed to appear in the case as his attorney; that, after he learned that judgment had been rendered, he saw Dabney, who then claimed that he had never been employed to represent Briggs in the case. Bennett testifies that he went with Briggs, and heard him tell Dabney that "I have got Bennett to go in with us, and all on that suit pull together," and heard other statements made by Briggs, but does not remember that Dabney said anything in reply, although he understood that he had employed Dabney in the case. At that time Dabney and Guiher were partners, but at the time of the trial on the petition of Briggs the

partnership had been dissolved.    Dabney testifies posi-
tively that he was never asked by Briggs to appear in
the case; that Briggs never asked him to take charge of
it, and never intimated to him that his services were
expected or desired in the case; and that he was never
with Briggs and Bennett when either of them asked
him to appear in the case.    Two letters written by
Briggs to Dabney after the former had learned of the
judgment were introduced in evidence.    In neither was
anything said in regard to a defense in the case, but
they showed that the writer relied upon the warranty
of Dabney as affording him indemnity against loss.
This is the substance of all the evidence given which
relates to the cause of the default.    Dabney's claim
that he was not employed to appear for Briggs is cor-
roborated to some extent by the letters and by the state-
ment of Bennett that he does not recollect that Dabney
made any response to what was said in regard to his
employment by Briggs.    The evidence fails to show
anything in regard to the cause of the dismissal of the
action as against Dabney and the purchase by his part-
ner of the judgment rendered, and the averments of the
petition with respect to those matters are entitled to
but little weight.    It is clear that the evidence was so
far sufficient to justify the District Court in finding that
Dabney was not in fact employed to represent Briggs
that we cannot interfere with its action in that respect.
It is said that Briggs was warranted in believing that
he had employed Dabney, and that his interests would
be protected.    But, if the testimony of Dabney be true,
Briggs had no reason for thinking that he had made
any arrangement for a defense in the case.    There is
ground for believing that Briggs looked to Dabney as
his grantor, and not as his attorney, for protection.    The
fact that Dabney had been his attorney for years, and
was consulted in this case, is entitled to some weight;

and it may be that, if the case were triable anew here, we should not adopt the conclusion reached by the District Court. But in proceedings of this character a large discretion is vested in the trial court, and its action will not be set aside unless that discretion has been abused. *Callanan v. Bank*, 84 Iowa, 9, 50 N. W. Rep. 69; *Willett v. Millman*, 61 Iowa, 123; *Westphal v. Clark*, 46 Iowa, 264; *Marsh v. Colony*, 36 Iowa, 603; *Rogers v. Cummings*, 11 Iowa, 459. It is not shown to have been abused in this case, and the judgment of the District Court is therefore *affirmed*.